[Civ. No. 9556.   Third Dist.   July 31, 1959.]

ERNEST M. McKEE, SR., Appellant, v. STATE OF
CALIFORNIA et al., Respondents.

Spurr & Brunner and Neil Tocher for Appellant.

Stanley Mosk, Attorney General, and Paul M. Joseph, Deputy Attorney General, for Respondents.

VAN DYKE, P. J.—This is an appeal from a judgment denying appellant's petition for a writ of mandate directed against the State of California, the Department of Finance and the members of the State Lands Division. All of the respondents will be referred to as the State.

The transactions involved here have to do with proceedings taken by appellant with the purpose of acquiring as lieu land, under the School Land Grant, 440 acres of land in Lake County belonging to the federal government. Appellant's contentions are that he purchased from the State an indemnity certificate, commonly called scrip; that he paid therefor; that the scrip was issued to him and that he then proceeded to have it applied to lieu lands on an acre-for-acre basis, thereby becoming entitled to a certificate of purchase. The contentions of the State are that the transactions were not "scrip" transactions, but instead that appellant made application to purchase the lieu lands for cash on an appraisal basis under which method of acquisition a preliminary deposit is first made and later, and after the lands have been clear-listed to the State and have been appraised, the purchaser pays any sum by which the appraisal exceeds the preliminary deposit.

Petitioner in mandate, appellant here, alleged that on December 5, 1951, he purchased from the State Lands Commission a scrip certificate covering 440 acres of land in the Death Valley National Monument in Inyo County, California, and paid the price thereof, to wit, the sum of $2,200; that on the same day he surrendered the scrip to the State and made his application to have selected for him by the State, in lieu of the land covered by the certificate, 440 acres of federally-owned land in Lake County; that he acted pursuant to sections 7412 and 7413 of the Public Resources Code and paid all fees required; that his application was forwarded to the federal government, but was rejected; that through the State, but in his own interest, he appealed from the rejection order

and by decision on appeal the order was vacated and the application was allowed; that the land applied for was then clear-listed to the State; that pursuant to the Public Resources Code applicable to lieu lands, and in particular pursuant to section 7417 thereof, petitioner thus became entitled to have issued to him a certificate of purchase showing full payment for the lieu lands; that notwithstanding he demanded such certificate of purchase the State demanded that he pay an additional sum of $97,900, the sum by which the appraisal exceeded his payment of $2,200, failing which his application for the purchase of said lieu lands would be cancelled and the lands would be offered for public sale. The petition further alleged that the proceedings for appraisal of the lands and the demand for the additional payment were proceedings in excess of the jurisdiction of the State agencies involved; that the law cast upon the State the ministerial duty through its proper agencies of issuing the purchase certificate.

The superior court issued its alternative writ. The return and answer of the State denied that there had occurred any transaction by which scrip was purchased under the Public Resources Code, but that instead appellant had simply made application to purchase lieu lands for cash, had paid $2,200 as a preliminary deposit, together with expense deposits, and that the proceedings had were pursuant to rules 2400 through 2402 of the rules and regulations of the State Lands Commission adopted pursuant to Public Resources Code provisions in sections 7301, 7405.1 and 7406; that the parties contemplated throughout that the lieu lands were to be sold for a price determined by an appraisal after being clear-listed to the State; that when the land had been clear-listed it was appraised at $100,100; that in accordance with the application of appellant and in accordance with commission rules a demand was then made upon the appellant to pay the balance of the $97,900 as the price of the land; that appellant had failed to pay the same and the commission ordered that his rights would be terminated unless he did so; that he failed to pay the additional amount and by so failing had failed to comply with the conditions upon his part to be performed under the law.

As stated by appellant the question presented is, Did appellant purchase scrip and apply it upon the lieu lands or did he apply for the purchase of the land direct?

The trial court found that on December 5, 1951, appellant

applied in writing to the commission to buy from the State for cash at a price to be fixed by an appraisal by the State the 440-acre parcel of Lake County lands; that the land was then vacant land owned by the United States; that at the time of appellant's application the land was subject to location and selection by the State through the State Lands Commission in lieu of the 16th and 36th sections granted to the State for the use of the public schools and in lieu of losses sustained by the State to its school land grant; that appellant's application was made by him and filed by the commission pursuant to the provisions of sections 7301, 7405.1 and 7406 of the Public Resources Code and other provisions of said code relating to the sale by the State of indemnity lands of the United States pursuant to rules 2400 through 2402 of the State Lands Commission (Cal. Admin. Code, tit. 2, div. 3, art. VI, §§ 2400-2402); that appellant when he filed his application paid to the commission as an initial offer $5.00 per acre for the said land so applied for, aggregating the sum of $2,200 and agreed to pay the balance of the purchase price, if any, within 20 days after demand by the commission. It is not disputed on this appeal that if the evidence before the court was sufficient to support the foregoing findings the judgment appealed from must stand.

A careful reading of the transcript and consideration of tne documentary evidence convinces us that the trial court's findings are substantially supported and that the judgment must be affirmed. We find much conflict on the essential points, but under the familiar rule that will not aid appellant. Appellant did testify that he was familiar with the longstanding provisions whereunder indemnity certificates, "scrip," could be purchased from the State and thereafter "located" upon lieu lands for which the State, responsive to its obligations under scrip purchases, and upon clear-listing of the federal lieu lands to it would issue its fully-paid certificate of purchase. Appellant said that he informed the State's agents with whom he dealt that such was his intention; that upon being informed the Lake County lands were available as lieu lands which the State could obtain he returned to Willits, where the witnesses were who had gone over the Lake County lands with him, filled out the necessary forms and mailed them to the commission along with the required funds. In support of his contention that he was buying scrip under provisions of the Public Resources Code authorizing sale of scrip and its later "location" he points to a certificate of

indemnity in the usual form where such purchases are being made which, when his application was received, was in fact made out by the commission's employees and, in form at least, executed by the proper officers of the State and thereafter retained in the State's file covering his application. This certificate, which was introduced in evidence and which had been produced from the State's file, reads as follows:

## STATE SCRIP
## INDEMNITY CERTIFICATE OF LOCATION—LIEU LANDS

No. 5100

STATE OF CALIFORNIA
DEPARTMENT OF FINANCE

STATE LANDS COMMISSION
STATE CAPITOL

DIVISION OF STATE LANDS
SACRAMENTO

Issued pursuant to the provisions of Article 3 of Chapter 1, Part 3, Division 6 of Public Resources Code

| NAME OF PURCHASER | DATE OF SALE | BASES FOR INDEMNITY | ACRES | PRICE PAID PER ACRE | TOTAL PURCHASE PRICE |
|---|---|---|---|---|---|
| Ernest M. McKee, Sr. | Dec. 5, 1951. | W½, W½ of NE¼ and NE¼ of NE¼ of Section 16, T. 24 N., R. 1 E., S.B.M. | 440.00 | $5.00 | $2,200.00 |

Death Valley National Monument, Proc. 2/11/33, surveyed.

This Certificate may be surrendered by the above-named purchaser to the Division of State Lands, entitling him to have selected from the vacant unappropriated lands of the United States, within this State, open to selection the same number of acres as represented by this certificate and in lieu of the bases hereinabove mentioned, subject, however, to the provisions of law where lands desired to be purchased are suitable for cultivation, and in accordance with the provisions of the Public Resources Code as above referred to.

This Certificate, which is NOT ASSIGNABLE, is issued to the above-named purchaser, who has paid to the undersigned the total purchase price above mentioned.

In Witness Whereof, I hereto set my hand and affix the seal of the State Lands Commission this 5th day of December, A.D. 19 51.

STATE LANDS COMMISSION

By Supervising Land and Title Abstractor.
DIVISION OF STATE LANDS

INYO COUNTY

It is not disputed that this indemnity certificate is in the form of scrip ordinarily issued to purchasers of scrip and if regularly issued and delivered to appellant would have entitled him at any future time to have surrendered it on an acre-for-acre basis for lieu lands available. There is nothing on the face of this instrument to indicate that it was other than what it purports to be. There is nothing concerning an ap-

praisal of lands or the possibility that further compensation would have to be paid.

But there is much evidence opposed to appellant's testimony and to his claim that he had in fact purchased scrip, that it had been delivered to him for the price paid, and that, simultaneously with its issue and because he was applying at the same time to purchase lieu lands by use of the scrip, he left the scrip in the possession of the State as a surrender thereof pursuant to his application for purchase of lieu lands. We will state that evidence as briefly as we can. Mr. Ireland, who, on behalf of the State, signed the purported certificate of indemnity and who had worked for the State Lands Commission from 1911 to 1953 and was in charge of the Sacramento office of the Division of State Lands in 1951, and until his retirement in 1953, testified as follows: Pursuant to an act passed in 1909, the Surveyor General sold scrip at public auction in his office on the first Monday in January, March, July and September which gave the purchaser the right to make selections of vacant unappropriated nonmineral open land upon surrendering certificates in payment therefor. This system for the sale of scrip at public auction was discontinued somewhere about 1920, at which time the price of scrip was fixed by the State Board of Control and anyone could secure scrip certificates either by writing in by mail or personally at the fixed price. When the money was sent in the scrip was issued and delivered to the purchaser. In the late 1940's another plan was begun which was described in a bulletin issued, reading in part as follows: "The price of indemnity certificates is fixed by the State Lands Commission, but in no event to be less than $5.00 per acre. Before the price is fixed, however, it will be necessary for an appraisal to be made of the government land desired and, in the event the value thereof is fixed at a price in excess of $5.00 per acre, the price so fixed would be the price the applicant would have to pay the State for the scrip in order to purchase the government land." Ireland testified that under this practice a prospective purchaser on getting in touch with the State office would be required to deposit money to cover the cost of an appraisal by the State of the federal land sought; that the appraisal would then be made by the State and after the appraisal the prospective purchaser would be advised of the cost of the scrip (the appraised value of the lieu lands) and he would then file an application with the State office, paying for the scrip, together with necessary fees of the United States and the State of California. In

1949 provisions were made in the Public Resources Code which authorized cash sales of lieu lands in accordance with commission rules. Rules 2400 through 2402 of the State Lands Commission were adopted and published in the Administrative Code under an entitlement: "Sale of Vacant United States Land." Under these rules, in addition to the various filing fees and expense deposit of $100, there was required a minimum initial offer of $5.00 per acre for the land applied for. Upon receiving the application and the necessary deposits the rules provided that the State, through the State Lands Commission, would make the selection by forwarding to the federal land office the necessary papers filed by the applicant and the selection papers necessary to be made out by the State. Then upon allowance of the State's selection by the federal land office the land would be appraised by the State and thereafter the price would be fixed at $5.00 per acre or at the appraised value, whichever was greater. The price so fixed would be the price the prospective purchaser of the lands would be required to pay. Ireland testified in effect that it was this later procedure which was followed by appellant and by the State land office and that there was no purchase of scrip made or intended. The State, in support of Ireland's testimony as to the nature of the transactions between the State and appellant, points to the application form filled out by appellant. In substance, this form, entitled, "Application to Purchase Lieu Lands," recites that appellant applies to purchase certain lands; that he asserts the land is not occupied; that he has personally examined each and every legal subdivision thereof and wants to purchase the same for his own use and benefit and has made no contract or agreement to sell the same. The following then appears in the form: "In accordance with Sections 7403, 7413 and 7416 of the Public Resources Code, I hereby surrender the following Certificates of Indemnity or Scrip in payment for said land: ———————————." At the bottom of the application form in large letters the following appears: "Each Application must be accompanied with a filing fee of $5.00, expense deposit of $100.00, and a minimum deposit of $5.00 per acre for the scrip pending appraisal of the land." The reference in the application form to sections 7403, 7413 and 7416 of the Public Resources Code and to the surrender of scrip is relied on by appellant as showing that the parties were dealing with a purchase of lieu land to be paid for with scrip. On the other hand, respondent points to the fact that there was no descrip-

tion of the scrip purported to be surrendered and explains the presence of the language referring to a scrip purchase as something that happened because a form ill-adapted to the actual transaction was used. The State points to the statement at the end of the application form hereinbefore quoted, which refers to "a minimum deposit of $5.00 per acre for the scrip pending appraisal of the land" as substantiating its contention that no sale of scrip was involved and that the transaction was one to bring about a purchase of the lieu lands for cash on an appraisal basis. Concerning the presence in the commission's file of the document entitled "Indemnity Certificate of Location," which we have hereinbefore quoted in full, there was testimony that it was never delivered nor intended to be delivered as scrip purchased by appellant, was a mere office memorandum to indicate the Inyo County lands lost to the State from the original federal grant of school lands constituting the bases for lieu land selections. According to the witness Ireland the scrip certificate was made out and placed in the file covering appellant's application for purchase of land merely as an office memorandum so that there would be a record of the base land in Inyo County being surrendered by the State to the United States for the lieu lands selected; that it was a convenient way of keeping track of such base lands by having such memorandum in each application file, instead of having to go to some record book in the office; that the certificate was not meant to indicate full payment for the lieu lands to be received by appellant. Another witness testified that in 1951 such memorandum was placed in all application files. As she put it, "At that time every application had an indemnity certificate of location, using old forms which were in the office, which showed the down payment." Ireland said that the certificates were "written up and put into the application [file] for reference purposes when we wanted to determine what piece of land was outstanding, without having to go through what we call an indemnity list." It was further testified, and this testimony was not controverted, that the certificate was fully made out and placed in appellant's file by a commission employee on the day that the application to purchase was received; that it remained in the file, its presence being unknown to appellant; that the knowledge of its existence was not obtained by appellant until years after it was placed in the file when appellant was in the office of the commission looking through the file for purposes of his own; that at that time he made no claim that it constituted his property

and that it remained in the file where he had seen it. There was further evidence concerning the validity, as a title document, of the certificate, but enough has been recited to show that the trial court was justified in finding as it did that the certificate had never been delivered to McKee and never had become a muniment of title. Specifically, the court's findings, which we hold to be supported, were: "that upon the date the petitioner applied to the State Lands Commission for said land and upon which the said Commission filed said application, but after said application had been filed, the State Lands Commission filled out a form that had been previously used by said Commission as the form for indemnity certificates of location; that said form was signed by an agent of the said Commission authorized to sign the same and was sealed with the seal of said Commission; said form was never delivered to petitioner or any person other than petitioner, but, instead, was placed in the file of said Commission relating to petitioner's said application and was at all times retained in the possession of said Commission; that said form was not intended by the said Commission or any of its employees or representatives as or for an indemnity certificate of location or scrip certificate under the provisions of the Public Resources Code or any other laws or any rules or regulations pertaining to the application, selection or sale of indemnity lands; that the said form contained a description of certain land in the Death Valley National Monument in the County of Inyo, State of California, intended by the said Commission to be used as base land and to be relinquished by the State of California to the United States upon the listing (or conveyance) to the State of California of the land in the County of Lake applied for by petitioner and about to be selected by the State of California from the United States; that said form, as so filled out, was intended by the State Lands Commission to be, and at all times was, an office memorandum of the State Lands Commission."

In support of its position that appellant bought land, not scrip, the State points to a letter written to appellant acknowledging receipt of appellant's application, reading as follows: "Receipt is acknowledged of your application to purchase, through this office with State scrip, the S½, W½ of NE¼ and SE¼ of NE¼ of Section 15, T. 11 N., R. 8 W., M.D.M., containing 440.00 acres in Lake County. Said application was accompanied with the required State filing fee of $5.00, ex-

pense deposit of $100.00 and $2,200.00 to cover the minimum scrip deposit of $5.00 per acre, pending appraisal.''

As further support for the State's contentions it appears that after appraisal of the land demand was made upon appellant for the payment of the large sum of money constituting the difference between the amount he had already paid in and the appraisal figure and he did not protest that the State was obligated to issue him a certificate of sale without further money, but, on the contrary, entered into negotiations with the State concerning the appraisal figures. There is a good deal in support of the contentions of both sides which we have not related. Undoubtedly, the forms used were not apt to truly reflect the transactions between the parties, but we think it unnecessary to discuss further the sufficiency of the evidence to support the trial court's related findings. The issue under the evidence was one of fact for resolution by the trial court. That court's resolution of the issue is supported by substantial evidence and is binding on appeal.

■ Appellant contends that the court committed prejudicial error in receiving into evidence over objection testimony as to the departmental practice of the State with respect to the sale of lieu lands or of scrip to be used for the purchase of lieu lands after statutory law had been enacted permitting cash sale of the land on an appraisal basis. There was introduced records of sales on such basis dating from 1949 through 1951, thus bracketing the proceedings between appellant and the State and showing that the sales were made on an appraisal basis. Other testimony was admitted concerning the same subject matter, the avowed intent of the State being to prove that after cash sales on an ap-. praisal basis were authorized under rules to be adopted by the commission scrip sales were discontinued. The State seeks to justify the admission of this material upon the theory that since the nature of the transaction in litigation was in issue the State could show its custom and practice concerning other proceedings of like nature had with others. The cases cited do not support the State's theory as to the admissibility of the evidence objected to. The issue here was as to the contract between appellant and the State. What the State may have contracted for with others would not prove the nature of its contract with appellant. It was still lawful to sell scrip with the right to apply it upon lieu land. The only question was as to which of these alternate roads had

been traveled. Cited cases holding that evidence of transactions of like kind with others can be introduced against the party having such transactions upon the theory that the course of conduct so evidenced constitutes admissions against interest have no application here where just the reverse is attempted, that is, where the person having such other transactions is attempting to prove that the transaction with the adverse party was the same as those with others. (*Lande* v. *Southern Calif. Freight Lines,* 85 Cal.App.2d 416 [193 P.2d 144].) We think that it was error to receive this evidence.

Under the constitutional mandate this judgment cannot be reversed unless there has been a miscarriage of justice because of the error in the receipt of evidence. We are satisfied that from the whole record it cannot be said a different result would probably have been reached by the trial court had this evidence not been offered and received. When McKee mailed in his application for purchase of lieu lands the form he used plainly stated in capital letters that he was making a minimum deposit of $5.00 an acre pending appraisal of the land. On the day that application was received its receipt was acknowledged by a letter from Ireland heretofore quoted ascribing the same character to the transaction, and appellant made no protest.

Appellant did not advance his claim that he was attempting to acquire the lands by buying scrip and that he had bought and paid for scrip which he was entitled to surrender in full payment of the selected lieu lands until long after he had received notice direct by letter that the appraisal was about to be made, had been asked to participate in the appraisal proceedings, had done so, had protested against the appraisal figures as being excessive and had negotiated for a reduction. In view of all this we believe that the same judgment would have been entered had the evidence objected to been excluded.

For the reasons given the judgment is affirmed.

Schottky, J., concurred.